## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 24-cr-00086-001 (DLF)** |
| **v.** | : | |
| | : | |
| **DANIEL VALDEZ,** | : | |
| | : | |
| **Defendant** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Daniel Valdez has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Two). For the reasons set forth herein, the government requests that this Court sentence Valdez to 30 days incarceration on Count One and 36 months' probation on Count Two. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

### I.    Introduction

Defendant Daniel Valdez, a 59-year-old truck driver and veteran of the United States Marine Corps, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote

count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Valdez pleaded guilty to violations of disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol and parading, demonstrating, or picketing in any Capitol building. The government's recommendation is based on Valdez's (1) knowledge and celebration that rioters breached metal fencing barricades when he was near the front of the crowd walking down Pennsylvania Walkway; (2) climbing through a broken window to enter the Capitol near the Senate Wing Door; (3) accompanying his son, Payton Valdez,[2] who posed for photos with a beer bottle and police riot shield when they were in the Crypt; (4) prior criminal history, including two prior trespass offenses; and (5) telling agents after his arrest that he does not regret his involvement. He later expressed remorse during his interview with the Probation Office after pleading guilty.

The Court must also consider that Valdez's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Valdez's

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

[2] Daniel Valdez was jointly charged with his son, Payton. On April 5, 2024, Payton Valdez pleaded guilty to 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G). Payton Valdez's sentencing is scheduled for September 10, 2024 before this Court.

crime support a sentence of 30 days of incarceration, 36 months of probation, 60 hours of community service, and $500 restitution in this case.

## II.    Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Statement of Offense.

*Defendant Valdez's Role in the January 6, 2021 Attack on the Capitol*

Daniel Valdez traveled with his adult son, Payton Valdez, to Washington D.C. to be present at the former President's "Stop the Steal" rally on January 6. 2021.

As shown below in Image 1, Valdez wore light brown boots, blue jeans, an olive coat with a brown corduroy collar, a black hoodie, a black stocking hat with "Carthartt" stitched on the front in white letters, and black sunglasses. At some points during the day, he carried folding chair bags slung over his shoulder.



*Image 1: Valdez at Freedom Plaza with his son, Payton Valdez.*

Valdez joined a crowd that gathered near the Peace Monument, located in the roundabout at Pennsylvania and First Street, an area known as Peace Circle. The area was blocked by fencing and closed to the public on January 6, 2021. Shortly after other rioters opened a section of the metal fencing barricades at the exterior perimeter of the Capitol grounds, Valdez, his son, and other rioters walked towards the Capitol on Pennsylvania Walkway as the first wave of rioters to reach Capitol grounds.

At approximately 12:56 p.m., Valdez passed barricades constructed of metal bike rack barriers, as shown below in Image 2. The barriers were marked with white "AREA CLOSED" signs.



*Image 2: Valdez (circled in green) next to his son, Payton (circled in yellow) as the crowd breaks through the fence line.*

Valdez then continued and walked towards the Capitol Terrace. He joined the crowd on the West Front of the Capitol building and the crowd continued to grow. For approximately one

hour, there were continuing skirmishes with law enforcement over fence lines. By 2:03 p.m., a riot had been declared, a recorded dispersal order was being broadcast from a large speaker near the front of the inaugural stage, and law enforcement was deploying munitions into the crowd.

Nevertheless, at approximately 2:24 p.m., as shown in the video marked as Exhibit A for sentencing, Valdez entered the U.S. Capitol building through the Senate Wing Door, which had been violently breached by other rioters less than 15 minutes before. A screenshot of his entry is reproduced in Image 3 below.



*Image 3: Screenshot at 1:34 of Exhibit A showing Valdez (circled in green) entering through a broken window.*

Valdez, accompanied by son Payton, then walked to and around the Crypt. While there, Valdez's son picked up a police riot shield that had been dropped by one of the United States Capitol Police Officers who was using it to defend the Capitol building against the rioters. The son celebrated his acquisition of this trophy by hosting a beer bottle and posing for a photograph.

Image 4 shows Payton Valdez with a riot shield in one hand and beer bottle in the other. Image 5 shows Payton Valdez with a beer bottle. *See* Images 4 and 5, below.



*Image 4*                                                    *Image 5*

At approximately 2:33 p.m., as shown in the video marked as Exhibit B for sentencing, Valdez exited the Capitol out of another broken window near the Senate Wing Door as directed by police.  A screenshot of his entry is reproduced in Image 6 below.



*Image 6: Screenshot at 6:19 of Exhibit B, as police direct rioters out of the building. Valdez (circled in green) prepares to exit out of a window next to the Senate Wing Door.*

In total, Valdez and his son were inside the Capitol for approximately ten minutes.

After exiting the Capitol, he remained in the restricted area until approximately 3:30 p.m.

Valdez sent several messages describing his entry into the Capitol. In one message he wrote, "OMG! We just busted through the gates. Everyone is rushing the capital! I've got video of us tearing down the barrier[.]" In another, he stated that he "got in through a busted out window."

Valdez also sent the two photographs of Payton Valdez taken in the Crypt, as shown above in Images 4 and 5. Valdez sent Image 4 with the message: "A riot shield we found that the police

dropped when they got over run. My son posing inside the capital. Cracked open a beer he brought along."

*Valdez's Post-arrest Interview with the FBI*

On October 24, 2023, Valdez gave a voluntary post-arrest interview to the FBI. During the interview, he said he went to Washington, D.C. to show support for Donald Trump. He claimed that he did not intend to enter the Capitol building and said he did not want to go against the flow of people. Valdez said he was shocked to see people entering through windows. Valdez claimed to agents that he saw United States Capitol Police officers waving people into the building. He acknowledged traveling to the Crypt, which he described as a "room with a bunch of statutes." He said after being in the Crypt, he asked police how to exit the building.

Valdez stated that he did not regret his involvement and commented that "time is getting short." He explained that he meant that the election is approaching and that corrupt government officials would soon be voted out of office.

*The Charges and Plea Agreement*

On February 20, 2024, the United States charged Valdez by a two-count Information with violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). On February 21, 2024, pursuant to a plea agreement, Valdez pleaded guilty to both counts of the Information. By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

**III.    Statutory Penalties**

Valdez now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000 per count. Valdez must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d

1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days of incarceration, 36 months of probation, 60 hours of community service, and $500 restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Valdez's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Valdez, the absence of violent or destructive acts is not a mitigating factor. Had Valdez engaged in such conduct, he would have faced additional criminal charges.

Valdez understood the violent and illegal nature of this riot from its very beginning. He witnessed the initial breach of the restricted area at Peace Circle. Nonetheless, he crossed into the restricted area—understanding, from the very first moment inside, that he was trespassing. Then, he then entered the Capitol by jumping through a "busted out" broken window near the Senate Wing Door, shortly after it had been violently breached.

9

Valdez's statements to FBI agents after January 6 show a lack of remorse and attempt to deny culpability. He falsely claimed that he saw United States Capitol Police officers waving people into the building. This, of course, was not true anywhere, much less at the broken window through which he climbed. He stated he did not regret his involvement and appears to look to the next election cycle for vindication.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

**B.  Valdez's History and Characteristics**

Valdez has been employed as a truck driver since 2007. PSR ¶ 67.

Valdez enlisted in the United States Marine Corps in 1983 and was medically discharged in 1984. ¶¶ 68-69. While Valdez's military service is laudable, it renders his conduct on January 6 all the more troubling.

Valdez has a history of arrests and convictions for minor offenses that goes back several decades. PSR ¶¶ 29-42. That history, according to the PSR includes:

- In 1986, Valdez was convicted of trespassing. PSR ¶ 29.

- In 1989, Valdez was convicted of theft exceeding the value of $400 from a hardware store and sentenced to five years of probation. PSR ¶ 30.

- In 1994, he was convicted of driving under the influence and sentenced to 30 days in jail. PSR ¶ 31.

- In 1995, Valdez issued a bad check to a supermarket and was given a fine. PSR ¶ 32.

- In 2005, Valdez was convicted of theft and sentenced to 12 months of probation and a fine. PSR ¶ 33.

- In August 2019, Valdez was convicted for the second time of trespass and was issued a fine. PSR ¶ 34.

The government recognizes that many of the offenses above occurred decades ago. However, as indicated by this history, Valdez's actions on January 6 were not an isolated event in an otherwise law-abiding life. They came, instead, after a series of previous charges, including two prior convictions for trespassing offenses. This history demonstrates a pattern of disregard for the law and property that is fully consistent with his behavior on January 6, when he entered the Capitol through a broken window.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence in this case to provide specific deterrence to Valdez also weighs in favor of a term of incarceration. Valdez's initial lack of remorse, as well as his two prior convictions for trespassing, demonstrate the need for specific deterrence.  Although Valdez swiftly accepted responsibility, he told FBI agents when he was arrested that he did not regret his involvement and believed that "time is getting short," referring to the time until the next election. The PSR reports that he expressed remorse in an interview with Probation in April 2024, after he pleaded guilty and was facing sentencing in this case. The Court should thus view any remorse Valdez expresses at sentencing with skepticism. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

Moreover, although some of his criminal history is dated, his most recent conviction in August 2019 was for trespass—the same offenses in this case. The instant case will be Valdez's

third conviction for trespass, which demonstrates his direct knowledge of the laws he was violating. Therefore, Valdez's sentence must be sufficient to provide specific deterrence from committing future crimes.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Valdez based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Valdez has pleaded guilty to the Information in this case, charging him with disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count One) and parading, demonstrating, or picketing in any Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Two). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences.

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Paul Westover*, 21-cr-00697-JEB, the court imposed 45 days incarceration for a defendant who also was present when rioters breached the perimeter at Peace Circle. An important factor in Westover's case was that he witnessed and celebrated the theft of government property by his travel companions. In this case, Daniel Valdez similarly celebrated with the trophy photo shown in Image 4 showing Payton Valdez taking hold of the riot shield they found in the Crypt. The government recognizes that the case is distinguishable, and Valdez is less culpable than Westover because Payton Valdez did not steal the shield, Westover penetrated further into the Capitol and entered the Speaker's suite of offices, and Westover destroyed evidence. However, unlike Valdez, Westover lacked criminal history.

In *United States v. William Vogel*, 21-cr-00056-CKK, the court imposed 30 days incarceration for a defendant who also observed clear signs that his entry into the Capitol building would be unlawful and displayed a lack of remorse. Vogel remained in the Capitol for nearly 20 minutes and unlike Valdez, had to be escorted out of the building by police. Vogel's prior criminal history consisted only of two traffic infractions in contrast to Valdez's multiple prior offenses.

In *United States v. Brandon and Stephanie Miller*, 21-cr-00266-TSC, the defendants were sentenced to 14 days incarceration for Ms. Miller and 20 days for Mr. Miller.  Both defendants entered the Capitol through the same broken window by the Senate Wing Door as Valdez, were also inside the building for approximately 10 minutes, and similarly expressed pride rather than remorse or contrition for their actions. Like Valdez, Mr. Miller also has been arrested for various offenses.

14

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

## V.      Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Valdez must pay $500 in restitution, which reflects in part the role Valdez played in the riot on January 6.[5] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Valdez's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 100.

## VI.    Fine

The defendant's convictions for violations of 40 U.S.S.G. §§ 5104(e)(2)(D) and (G) subject him to a statutory maximum fine of $5,000 for both counts. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense

---

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

      Here, the defendant has not shown an inability to pay, thus pursuant to the considerations outlined in U.S.S.G. § 5E1.2(d), the Court has authority to impose a fine. § 5E1.2(a), (e).

**VII.**    **Conclusion**

      Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 30 days incarceration on Count One, 36 months' probation on Count Two, 60 hours of community service, and $500 in restitution. Such a sentence promotes respect for the law and deters future crime by imposing restrictions on Valdez's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:    */s/ Sarah W. Rocha*
                SARAH W. ROCHA
                Trial Attorney
                D.C. Bar No. 977497
                601 D Street, NW
                Washington, DC 20530
                sarah.wilsonrocha@usdoj.gov